Steven John Moser (SM1133)
Steven J. Moser, P.C.
3 School Street, Suite 207B
Glen Cove, New York 11542
(516) 671-1150 • F (516) 882-5420
*Attorney for Plaintiff*

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JUL 24 2014   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Case No.:

Mario Rey Silva, individually and on behalf of all others similarly
situated,

# CV-14 4457

Plaintiff,

COMPLAINT

-against-

# BIANCO, J.

New Food Corp. d/b/a Foodtown, JCA Food Corp. d/b/a Foodtown,
JJC Food Corp. d/b/a Foodtown, SWF Food Corp. d/b/a Foodtown,
Mother Food Corp. d/b/a Foodtown, Jason Ferreira, Jose Ferreira
and Andres Ferreira

# TOMLINSON, M

Defendants.

---

## COMPLAINT

Plaintiff Mario Rey Silva ("Plaintiff"), on behalf of himself and all others similarly

situated, by his attorney Steven J. Moser, P.C., complaining of Defendants New Food Corp.,

JCA Food Corp, JJC Food Corp, SWF Food Corp., Mother Food Corp., (collectively the

"Ferreira Enterprise"), Jason Ferreira, Jose Ferreira and Andres Ferreira., alleges:

### NATURE OF THE ACTION

1.      The Ferreira Enterprise consists of a chain of five supermarkets doing business as

Ferreira Foodtown, owned and operated by Jason Ferreira, Jose Ferreira, and Andres Ferreira

(the "Ferreira Family"). The five Ferreira Foodtowns are located at 76-10 37th Avenue, Jackson

Heights; 84-05 Parsons Blvd, Jamaica; 173-09 Jamaica Avenue, Jamaica; 520 S. Broadway,

Hicksville; and 3367 Hillside Avenue, New Hyde Park, New York. Ferreira Foodtown operates

as a grocery retailer, with online shopping services in addition to physical store locations.   Each Ferreira Foodtown supermarket offers more than 10,000 products, including the store's "personal private brand of Ferreira Foods."   http://www.ferreirafoodtown.com (last visited 7/12/2014).

2.        Mr. Rey Silva and other similarly situated employees (the "FLSA collective") lived in crawl spaces or similar areas within each supermarket which were unfit for human habitation.  The Plaintiff and the Collective worked in the store during the day, and remained in the store at night after the front gates were locked, performing work which included security and cleaning.

3.        Defendants have acted in willful violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law (NYLL) by failing to pay Mr. Rey Silva and the Collective overtime wages to which they are entitled.  The Defendants' willfulness is exhibited by their widespread practice of violating numerous state and federal laws, including the Social Security Act; the Internal Revenue Code; New York Disability Benefits Law; New York Tax Law; New York State Agriculture and Markets Law; the New York State Fire Code; and municipal zoning codes.

4.        This action is brought to recover unpaid overtime wages, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and New York Labor Law   § 190, et seq. ("NYLL").

5.        This action is also brought to recover spread of hours pay under 12 NYCRR § 142.4, and for Wage Statement and Wage Notice violations of the NYLL, as amended by the New York Wage Theft Prevention Act, effective April 9, 2011 (NYLL § 195).

6.        Defendants have systematically ignored the requirements of the FLSA and NYLL, including recordkeeping requirements; have failed to compensate their employees for

- 2 -

overtime hours worked; have failed to compensate their employees for vacation and spread of hours pay; have failed to provide Wage Notices as required by NYLL §195(3); have failed to provide Wage Statements on or after February 1, 2012 as required by NYLL §195(1); and have violated the One Day Rest In Seven law under NYLL § 161.

7.      Plaintiff seeks overtime pay, spread of hours pay, vacation pay, liquidated damages, pre-judgment and post-judgment interest, punitive damages, compensatory damages, and attorney's fees and costs pursuant to the FLSA and NYLL.

JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, as such claims are so related in this action to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims in this action occurred within the Eastern District of New York.

THE PARTIES

*Plaintiff*

10.     The Plaintiff herein is an adult individual who is a resident of Nassau County, New York.

11.     The Plaintiff herein was employed by the Defendants during the six year period prior to the filing of this complaint (the "relevant time period").

- 3 -

12.     The Plaintiff herein is a covered employee within the meaning of the FLSA and the NYLL.

13.     A written consent form for the Plaintiff is annexed to this complaint.

*Defendant New Food Corp.*

14.     The Defendant New Food Corp. is a New York Corporation.

15.     The Defendant New Food Corp's principal place of business is located at 3367 Hillside Avenue, New Hyde Park, New York  11040.

16.     The Defendant New Food Corp., at times during the relevant time period has done business as Metfood Supermarket.

17.     The Defendant New Food Corp. at times during the relevant time period, and at the present time, does business as Foodtown.

*Defendant JCA Food Corp.*

18.     The Defendant JCA Food Corp. is a New York Corporation.

19.     The Defendant JCA Food Corp's principal place of business is located at 84-05 Parsons Blvd., Jamaica, New York  11432.

20.     The Defendant JCA Food Corp., at times during the relevant time period has done business as Metfood Supermarket.

21.     The Defendant JCA Food Corp. at times during the relevant time period, and at the present time, does business as Foodtown.

*Defendant JJC Food Corp.*

22.     The Defendant JJC Food Corp. is a New York Corporation.

23.     The Defendant JJC Food Corp's principal place of business is located at 520 South Broadway, Hicksville, New York  11801.

24.     The Defendant JJC Food Corp., at times during the relevant time period has done business as Metfood Supermarket.

25.     The Defendant JJC Food Corp. at times during the relevant time period, and at the present time, does business as Foodtown.

*Defendant SWF Food Corp.*

26.     The Defendant SWF Food Corp. is a New York Corporation.

27.     The Defendant SWF Food Corp's principal place of business is located at 76-10 37th Avenue, Jackson Heights, New York  11372.

28.     The Defendant SWF Food Corp., at times during the relevant time period has done business as Metfood Supermarket.

29.     The Defendant SWF Food Corp. at times during the relevant time period, and at the present time, does business as Foodtown.

*Defendant Mother Food Corp.*

30.     The Defendant Mother Food Corp. is a New York Corporation.

31.     The Defendant Mother Food Corp's principal place of business is located at 173-09 Jamaica Avenue, Jamaica, New York  11432.

32.     The Defendant Mother Food Corp., at times during the relevant time period has done business as Metfood Supermarket.

33.     The Defendant Mother Food Corp. at times during the relevant time period, and at the present time, does business as Foodtown.

*The Ferreira Enterprise*

34.     New Food Corp., JCA Food Corp., JJC Food Corp., SWF Food Corp., and
Mother Food Corp. (the "Ferreira Enterprise"), acted as a unified operation under common
ownership and control, for a common business purpose.

35.     Upon information and belief, for each calendar year within the relevant time
period and up to the present time, the Ferreira Enterprise's  annual gross volume of sales made or
business done was not less than $500,000.00.

*Defendant Jason Ferreira*

36.     Jason Ferreira is a natural person residing at 57 Robby Lane, New Hyde Park,
New York.

37.     At times during the relevant time period Defendant Jason Ferreira has been an
officer of New Food Corp.

38.     At times during the relevant time period Defendant Jason Ferreira has been an
officer of JCA Food Corp.

39.     At times during the relevant time period Defendant Jason Ferreira has been an
officer of JJC Food Corp.

40.     At times during the relevant time period Defendant Jason Ferreira has been an
officer of SWF Food Corp.

41.     At times during the relevant time period Defendant Jason Ferreira has been an
officer of Mother Food Corp.

42.     At times during the relevant time period Defendant Jason Ferreira has been a
shareholder of New Food Corp.

- 6 -

43.     At times during the relevant time period Defendant Jason Ferreira has been a shareholder of JCA Food Corp.

44.     At times during the relevant time period Defendant Jason Ferreira has been a shareholder of JJC Food Corp.

45.     At times during the relevant time period Defendant Jason Ferreira has been a shareholder of SWF Food Corp.

46.     At times during the relevant time period Defendant Jason Ferreira has been a shareholder of Mother Food Corp.

47.     Defendant Jason Ferreira has been the Vice President and General Manager of at least five of the Ferreira enterprise's supermarkets, including the Ferreira Foodtown New Hyde Park supermarket, during the relevant time period and at all times.

48.     At times during the relevant time period, Jason Ferreira has exercised operational control over the Ferreira Enterprise.

49.     At times during the relevant time period, Jason Ferreira had the power to hire and fire Plaintiff and the FLSA Collective.

50.     At times during the relevant time period, Jason Ferreira controlled Plaintiff's and the FLSA Collective's terms and conditions of employment, and determined the rate and method of their compensation.

51.     The Defendant Jason Ferreira is an employer within the meaning of the FLSA and the NYLL, and at all during the relevant time period employed the Plaintiff and similarly situated employees.

- 7 -

*Defendant Jose Ferreira*

52.     Jose Ferreira is a natural person residing at 23 Royal Way, New Hyde Park, New York  11040.

53.     At times during the relevant time period Defendant Jose Ferreira has been an officer of New Food Corp.

54.     At times during the relevant time period Defendant Jose Ferreira has been an officer of JCA Food Corp.

55.     At times during the relevant time period Defendant Jose Ferreira has been an officer of JJC Food Corp.

56.     At times during the relevant time period Defendant Jose Ferreira has been an officer of SWF Food Corp.

57.     At times during the relevant time period Defendant Jose Ferreira has been an officer of Mother Food Corp.

58.     At times during the relevant time period Defendant Jose Ferreira has been a shareholder of New Food Corp.

59.     At times during the relevant time period Defendant Jose Ferreira has been a shareholder of JCA Food Corp.

60.     At times during the relevant time period Defendant Jose Ferreira has been a shareholder of JJC Food Corp.

61.     At times during the relevant time period Defendant Jose Ferreira has been a shareholder of SWF Food Corp.

62.     At times during the relevant time period Defendant Jose Ferreira has been a shareholder of Mother Food Corp.

63.     At times during the relevant time period, Jose Ferreira has exercised operational control over the Ferreira Enterprise.

64.     At times during the relevant time period, Jose Ferreira had the power to hire and fire Plaintiff and the FLSA Collective.

65.     At times during the relevant time period, Jose Ferreira controlled Plaintiff's and the FLSA Collective's terms and conditions of employment, and determined the rate and method of their compensation.

66.     The Defendant Jose Ferreira is an employer within the meaning of the FLSA and the NYLL, and at all during the relevant time period employed the Plaintiff and similarly situated employees.

*Defendant Andres Ferreira*

67.     Andres Ferreira is a natural person residing at 10 Longridge Lane, Glen Head, New York 11545.

68.     At times during the relevant time period Defendant Andres Ferreira has been an officer of New Food Corp.

69.     At times during the relevant time period Defendant Andres Ferreira has been an officer of JCA Food Corp.

70.     At times during the relevant time period Defendant Andres Ferreira has been an officer of JJC Food Corp.

71.     At times during the relevant time period Defendant Andres Ferreira has been an officer of SWF Food Corp.

72.     At times during the relevant time period Defendant Andres Ferreira has been an officer of Mother Food Corp.

73.     At times during the relevant time period Defendant Andres Ferreira has been a shareholder of New Food Corp.

74.     At times during the relevant time period Defendant Andres Ferreira has been a shareholder of JCA Food Corp.

75.     At times during the relevant time period Defendant Andres Ferreira has been a shareholder of JJC Food Corp.

76.     At times during the relevant time period Defendant Andres Ferreira has been a shareholder of SWF Food Corp.

77.     At times during the relevant time period Defendant Andres Ferreira has been a shareholder of Mother Food Corp.

78.     At times during the relevant time period, Andres Ferreira has exercised operational control over the Ferreira Enterprise.

79.     At times during the relevant time period, Andres Ferreira had the power to hire and fire Plaintiff and the FLSA Collective.

80.     At times during the relevant time period, Andres Ferreira controlled Plaintiff's and the FLSA Collective's terms and conditions of employment, and determined the rate and method of their compensation.

81.     The Defendant Andres Ferreira is an employer within the meaning of the FLSA and the NYLL, and at all during the relevant time period employed the Plaintiff and similarly situated employees.

## COLLECTIVE ACTION ALLEGATIONS

82.     The FIRST CAUSE OF ACTION herein is brought by the Plaintiff Mario Rey Silva on behalf of himself and similarly situated persons who are current and former employees

- 10 -

of the Ferreira enterprise since the date three years prior to the filing of the Complaint who elect to opt-in to this action (the "FLSA Collective").

83.    The FLSA Collective consists of at least five (5) similarly situated current and former employees of the Ferreira enterprise who live or have lived in the Ferreira Enterprise's supermarkets, and have been victims of their employers' common policy and practices that have violated their rights under the FLSA by, inter alia, willfully failing to pay overtime and spread of hours pay.

84.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiff and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA by failing to pay employees for all of the hours worked in excess of forty (40) hours per week;

85.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

86.    Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant damage to Plaintiff and the FLSA Collective.

87.    The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  Those similarly situated employees are known to the Defendant, are readily identifiable, and locatable through Defendant's records.  These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

88.    Plaintiffs intend on amending the complaint to assert causes of action under the New York Labor Law on behalf of each individual that opts-into this action.

- 11 -

THE LAW

*Overtime*

89.     The FLSA, "Section 207, specifies that an employer must pay employees who work in excess of forty hours during a workweek for the excess hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); *Santillan v. Henao*, 822 F.Supp.2d 284, 292 (E.D.N.Y. 2011). Employers in violation of this provision "shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages."   29 U.S.C. § 216(b); *Santillan* at 292.   "New York Labor Law also expressly provides that employees are entitled to recover all unpaid wages." NYLL § 198(3); *Santillan* at 292.

*Recordkeeping and Burden of Proof*

90.     "Like its federal counterpart [the FLSA], the [New York] Labor Law requires that employers maintain records for their employees who fall under the Labor Law's wage protections.   Generally, an employee-plaintiff under the FLSA has the burden of proving that he performed work for which he was not properly compensated...[T]he easiest way for an FLSA plaintiff to discharge his or her burden of proof is, generally, to secure the production of such records from the employer, who has the duty for their maintenance under section 11(c) of the FLSA.  However, by defaulting [by not keeping proper records] defendants have deprive[ ] the plaintiff of the necessary employee records required by the FLSA, thus hampering plaintiff's ability to prove his damages...[T]he Supreme Court in *Anderson* held that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. As courts have found, a plaintiff can meet

- 12 -

this burden by relying on recollection alone…[W]here the employer has defaulted… the employee's recollection and estimates of hours worked are presumed to be correct. New York law goes one step further and requires that employers who fail to maintain the appropriate records bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements." 29 C.F.R. Pt. 516; N.Y. Lab. Law § 196–a; *Santillan* at 293-294; *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 687 (1946), *superseded on other grounds by* The Portal to Portal Act of 1947, 29 U.S.C. 251, et seq.

### *Spread of Hours*

91.    "NYLL contains a 'spread of hours' provision which allows a plaintiff to recover an extra hour's worth of pay at the minimum wage for each day that the employee works in excess of ten hours." NYCRR, tit. 12, §142-2.4; *Santillan v. Henao*, 822 F.Supp.2d 284, 293 (E.D.N.Y. 2011). "Section 663 of the Labor Law also expressly authorizes an employee to sue his or her employer to recover unpaid wages otherwise due to him or her under the statute." NYLL § 663(1); *Santillan* at 293.

### *Wage Statements*

92.    NYLL § 195-3, requires each employer to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For non-exempt employees, the statement must include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

- 13 -

93.    For each week in which an employer does not provide an employee a wage statement in conformity with the requirements of NYLL §195-3, the employee is entitled to recover $100, up to a total of $2,500.00 as well as costs and attorney's fees.   NYLL §198-1-d.

*Wage Notices*

94.    The New York Labor Law, as amended by the Wage Theft Prevention Act, effective April 9, 2011, requires all employers to provide employees a notice containing, inter alia, the employee's regular rate and overtime rate.   NYLL §195(1).

95.    For each week in which the employee does not receive the require wage notice, the employee may recover in a civil action $50, up to a total of $2,500.00, as well as costs and attorney's fees.   NYLL §198-1-b.

FACTUAL ALLEGATIONS

96.    The Plaintiff was formally employed by Defendant New Food Corp., one of the five corporations comprising the Ferreira Enterprise, from approximately January 10, 2000 to November 6, 2013.

97.    For approximately 13 years, and except for the last few months of employment, Plaintiff resided in the supermarket where he worked, in a crawl space, accessed by a ladder.

98.    Plaintiff worked as a grocery clerk and cleaner six days a week, from 7:00 a.m. to 8:00 p.m., and as a cleaner and security guard 7 nights a week.

99.    Seven nights a week, the Defendants did not allow the Plaintiff to leave the supermarket between the hours of 8:00 p.m. and 7:00 a.m.; instead, the Plaintiff was required to provide security for the store.

100.    The crawl space had no smoke alarm, no carbon monoxide alarm, no kitchen and no bathroom or place to wash or bathe, so that the plaintiff had to use the customers' bathroom to

- 14 -

wash himself.    The crawl space had no windows and almost no type of ventilation, causing the Plaintiff to feel ill with nausea on many mornings.

101.    The crawl space was illegal as a residence and unfit for human habitation under the Fire Code of New York and the Zoning Code of New Hyde Park.

102.    The following allegations are based upon the Plaintiff's recollection, as the Defendants have failed to comply with the recordkeeping provisions of the FLSA and the NYLL, and the plaintiff can therefore not rely on the Defendants' records.    The Plaintiff reserves the right to amend the factual allegations herein to the extent that records are discovered which (1) either refresh the Plaintiff's recollection or (2) may be used to substantiate the precise number of hours worked/wages paid.

103.    The Plaintiff normally worked as a grocery clerk from about 7AM to 8 PM, Monday, Tuesday, Wednesday, Friday, Saturday, and Sunday, for a total of approximately 72 hours per week.    In the evening, after the store closed, and even on Thursdays, he would clean the entire store.    He would sweep and mop the floors, clean the shelves and registers, etc.    Even when he was not cleaning the store, he was not allowed to leave the store.    Thus, the only time he was not working was when he slept, which was, on average, 4 hours a night, during his unpaid lunch hour, and on Thursday during the day.    His average workweek was approximately 110 hours.

104.    There was never a single week during the entire course of his employment with Defendants that the Plaintiff worked less than 40 hours per week.

105.    Approximately 3 months before he was fired, the Defendants required the Plaintiff to move his belongings to an apartment, explaining that in this way inspectors would not impose fines for the Plaintiff's living in the supermarket.

- 15 -

106.    The Plaintiff then slept for those 3 months either in the supermarket or the apartment, depending on the needs of the Defendants.

107.    Defendants fired The Plaintiff on November 6, 2013, without cause.

108.    Pedro Vizcaino, Defendant's Human Resources Manager, falsely stated on a termination letter dated November 6, 2013, that the Plaintiff resigned.

109.    During the relevant time period, the Plaintiff's regular rate of pay ranged between $6.50 and $8.00 per hour.

110.    The Defendants' scheme to deprive the plaintiff of overtime was twofold:  First, the Defendants failed to pay the Plaintiff for all overtime hours worked as a grocery clerk by unilaterally reducing his overtime hours paid.   Second, the Defendants compensated the Plaintiff a fixed salary for all night work, regardless of the number of hours worked.  For most of his employment with the Defendants, the Plaintiff was paid a salary of only $245 per week for all work as a cleaner and security guard.   Later his weekly salary as a cleaner and security guard was increased to $270.

111.    The Defendants did not provide Wage Statements as required by the NYLL; instead, they issued "cash payroll envelopes," samples of which are annexed hereto as Exhibits 1-3.  These "cash payroll envelopes" reveal the Defendant's scheme to deprive the Plaintiff of overtime.

112.    For example, when the plaintiff was issued the cash payroll envelope in Exhibit 1, his regular rate of pay was $6.75 per hour.  The cash payroll envelope shows only 63 hours worked despite the fact that the plaintiff regularly worked 110 hours per week.  The cleaner and security guard salary was $245.  Considering that the plaintiff's average workweek was 110

- 16 -

hours, his gross pay should have been approximately $979.10 (40 hours x $6.75 + 70 hours x $10.13). The resulting underpayment of overtime for this week is approximately $230.00.

113.    For example, when the plaintiff was issued the cash payroll envelope in Exhibit 2, his regular rate of pay was $7.50 per hour. The cash payroll envelope shows only 60 hours worked despite the fact that the plaintiff regularly worked 110 hours per week. The cleaner and security guard salary was $270. Considering that the Plaintiff's average workweek was 110 hours, his gross pay should have been approximately $1087.50 (40 hours x 7.5 + 70 hours x 11.25). The resulting underpayment of overtime for this week is approximately $292.50.

114.    For example, when the plaintiff was issued the cash payroll envelope in Exhibit 3, his regular rate of pay was $8.00 per hour.  The cash payroll envelope does not even state the total hours worked. However, mathematical calculations reveal that based upon his hourly rate, $645.40 would have been intended to compensate the plaintiff for 67 hours, well below the actual number of hours worked.  The cleaner and security guard salary was $270.  Considering that the Plaintiff's average workweek was 110 hours, his gross pay should have been approximately $1,160.00 (40 hours x $8 + 70 hours x $12.00).  The resulting underpayment of overtime for this week is approximately $245.00.

115.    The Plaintiff never received spread of hours pay, as required by NYLL, although he worked more than 10 hours a day, 6 days a week, for approximately 13 years.

### FIRST CAUSE OF ACTION

### OVERTIME VIOLATIONS

Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq.

116.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

117. Defendants were each an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

118. Defendants' employees handled, sold and otherwise worked on goods or materials that have been moved in or produced for commerce by any person, and Defendants have at least $500,000 of annual gross volume of sales made.

119. At all times relevant, Plaintiff was an employee within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

120. The Defendants employed the Plaintiff as employers.

121. Defendants failed to pay Plaintiff overtime wages to which he is entitled under the FLSA.

122. Defendants' violations of the FLSA have been willful, in that they knew or should have known that their actions, as described herein, violated the FLSA.

123. Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

124. As a result of Defendants' violations of the FLSA, Plaintiff has suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, and liquidated damages, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

SECOND CAUSE OF ACTION

OVERTIME VIOLATIONS

New York Labor Law Article 19, §§ 650 et seq., and the supporting

New York State Dep't of Labor Regulations, 12 N.Y.C.R.R. Part 142

125.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

126.    At all times relevant the Plaintiff was an employee within the meaning of the NYLL.

127.    At all times relevant, the Defendants have been joint employers of the Plaintiff within the meaning of the NYLL.

128.    The Plaintiff is covered by the NYLL.

129.    Defendants failed to pay the Plaintiff overtime wages to which he is entitled under NYLL Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

130.    Defendants' violations of the NYLL have been willful in that they have been part of a scheme to evade the overtime provisions of the NYLL.

131.    Due to Defendants' violations of the NYLL, the Plaintiff is entitled to recover from Defendants his unpaid overtime wages and liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## THIRD CAUSE OF ACTION

### SPREAD OF HOURS PREMIUM

### 12 N.Y.C.R.R. §137

132.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

133.    Defendants have willfully failed to pay Plaintiff additional compensation of one (1) hour's pay at the basic minimum hourly wage rate for each day during which his spread of hours exceeded ten (10).

134.    By Defendants' failure to pay Plaintiff spread-of-hours pay, Defendants have willfully violated the NYLL Article 19, §§ 650, et seq., and the supporting New York State Department of Labor Regulations, including, but not limited to, 12 NYCRR §§142-2.4 and 142-2.18.

135.    Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover an amount prescribed by statute, reasonable attorney's fees and costs of the action, pre-judgment and post-judgment interest, and liquidated damages.

### FOURTH CAUSE OF ACTION

### WAGE THEFT PREVENTION ACT WAGE NOTICE VIOLATIONS

### New York Labor Law §§ 195 & 198

136.    Plaintiff realleges and incorporates by reference each allegation contained in the paragraphs above, and by reference repleads and incorporates them as though fully set forth herein.

137.    New York Labor Law §195(1)(a), requires an employer to furnish to each employee "a notice containing the following information: the rate or rates of pay and basis

- 20 -

thereof…in writing in English and in the language identified by each employee as the primary language of such employee."

138.    The Defendants failed to provide the notice required by New York Labor Law § 195(1)(a) to Plaintiff.

139.    Due to Defendants' violations of NYLL §195(1)(a), the Plaintiff is entitled to recover from Defendants damages of Fifty Dollars ($50.00) for each work week that the violation occurred or continue to occur, up to two thousand five hundred dollars ($2,500.00), together with costs and reasonable attorney's fees.   NYLL §198(1)(b).

FIFTH CAUSE OF ACTION

WAGE THEFT PREVENTION ACT WAGE STATEMENT VIOLATIONS

New York Labor Law §§ 195 & 198

140.    Plaintiff realleges and incorporates by reference each allegation contained in the paragraphs above, and by reference repleads and incorporates them as though fully set forth herein.

141.    New York Labor Law §195, subdivision three, requires an employer to furnish to each employee "a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular

- 21 -

hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

142.    The Defendants failed to provide the Plaintiff adequate wage statements as required by New York Labor Law § 195(3).

143.    Due to Defendants' violations of the NYLL §195(3), Plaintiff is entitled to recover from Defendants damages of One Hundred Dollars ($100.00) for each work week that the violation occurred or continue to occur, up to two thousand five hundred dollars ($2,500.00) together with costs and reasonable attorney's fees.  NYLL §198(1)(d).

### CLAIM FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

(a) An order authorizing the issuance of notice at the earliest possible time to members of the FLSA Collective.  This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

(b) Unpaid overtime wages;

(c) An additional and equal amount as liquidated damages under the NYLL;

(d) An additional and equal amount as liquidated damages under the FLSA;

(e) Unpaid spread-of-hours pay under state law;

(f) Liquidated damages in an amount equal to unpaid spread-of-hours pay under state law;

(g) Liquidated damages for the Defendants' violations of the notice provisions of the New York Wage Theft Prevention act;

(h) Liquidated damages for the Defendants' violations of the wage statement

provisions of the New York Wage Theft Prevention act;

(i) Pre-Judgment and Post-Judgment interest, as provided by law;

(j) Attorneys' fees and costs of suit, including expert fees; and

(k) Such other, injunctive and equitable relief as the Court may deem just and

proper.

Dated: Glen Cove, New York
       July 22, 2014

                              Respectfully Submitted,

                              STEVEN J. MOSER, P.C.

                              Steven John Moser
                              3 School Street, Suite 207B
                              Glen Cove, New York  11542
                              (516) 671-1150 ● F (516) 882-5420
                              smoser@moseremploymentlaw.com












This Sunday, November 7 is Daylight
Savings Time, please do not forget to
change your clocks.
Thank you



**Exhibit 1**